Good morning, Maine Police Corp. I'm Dennis Moran representing Southwest Traders. Stan Lambert was a fisherman in the northwest for virtually all of his life and was going into his golden years and he decided he was going to set up his retirement in Pago Pago. And he purchased his house and had a girlfriend down there and was getting ready, he was moving things down there. One of the things he did at the end of October of 2008 was he went over to Dock Street Brokers over here in Ballard and he bought a boat. It wasn't his first, he'd been buying boats and fishing boats for most of his life. But he bought a boat and then he was going to move it down to Pago Pago with his retirement. He went to his lawyer to re-document the ship. Mr. Thoreen advised him, Stan you've got a problem, you're not a U.S. citizen technically so you can't re-document the boat in your name. So they resolved the problem by creating an LLC, put it in that name and then we'll move the boat on down. At the same time, Mr. Lambert was down getting insurance for the operation, for the transit essentially. With insurance people he'd known for a lot of years, I don't want to say all his life, but a lot of years. And he's doing the two things at the same time. Now Mr. Lambert's a fisherman, he's not an insurance specialist and he's going into his retirement. He does what he appears to think he has to do to get the insurance. They re-document the vessel, the material is sent to the underwriters and then he sends the ship off to Hawaii on the first leg to Pago Pago. The ship encounters heavy weather, is damaged, puts in at Honolulu, the insurance company responds, sends out an adjuster, they adjust the claim, come to basically a number for the damage and they're waiting on payment when Mr. Lambert is killed in a motorcycle accident, essentially waiting for the check. So that leaves the ship up on blocks at the Morisco Yard in Honolulu, no money to pay anything and we're in the midst of this claim process. The claim process then continues until April when finally the insurance company decides, okay we're going to pay some of the claim and we're going to look at some of the rest of this. Then the insurance defense lawyers get involved and everything comes to a full stop. A lawsuit has to be filed and this defense of Uberme Fide, and I will mispronounce that virtually every time I say it. It's a wonderful word. Maybe I got it right that time. Is raised. Now the case is removed right at the 30 day limit before any discovery can be accomplished, including the deposition. Although the deposition was noted initially, we were in Washington State Court, Washington has a rule that you can't take deposition within 30 days of the service and that's right on the same deadline as the removal. Though the deposition was noted, it was improperly noted and then it was re-noted later. Ultimately, once the case was removed, the automatic federal stay kicked in. So there was no discovery. No discovery in this case and this case went straight to summary judgment on both sides. Now, after the district court looked at the Uberme Fide defense and properly said, look, there's two parts to this thing. You can prove Uberme Fide by showing an intentional misrepresentation for some dark purpose and the district court said, look, we don't have enough here to determine that. But then the district court went on to the second possible way to prove Uberme Fide, which says any, you know, essentially a nondisclosure of a material fact, a fact material to the underwriting decision, which essentially the assured should have known, can also raise this defense of Uberme Fide and then avoid ab initio of the contract. Well, but the court at that point was working with no discovery, no just, you know, declarations, essentially a declaration of one person, Robin Armfeld. And based on that declaration, the district court entered its order at page 7 and so the court is persuaded that the ownership of the vessel is a material fact subject to the disclosure requirements of insurance law, meaning that Uberme Fide, the second way to prove it. Now, we have a number of problems with this because, first of all, once you look at that, it sounds like there's actually been discovery and there's been a trial. It sounds like, you know, the court was persuaded by conflicting testimony, when, in fact, the universe at that time was simply Robin Armfeld, an underwriter, submitted a declaration saying, you know, in retrospect, I would have written this claim had I known A, B, C, and D. Now, we suggested at the district court level that maybe that wasn't exactly true, that maybe we ought to have an opportunity to have some discovery to test Ms. Armfeld's declaration to figure out whether she's, you know, telling the truth here. Didn't you bring a motion for summary judgment? We brought a motion for summary judgment. Was that the first motion brought for summary judgment? Yeah, it was a – I think they were simultaneous, but they might have been a week apart, but yeah. We thought we had summary judgment on our facts because we thought as a matter of law – So you filed for summary judgment. Yes. And when it looks like it's not going well, you decide you need discovery. That sort of suggests that you thought this case was ready to be decided on summary judgment, doesn't it? Well, you know, you can – just because you think summary judgment is appropriate on one of several issues or in one direction doesn't mean that you automatically waive any summary judgment claim back against you or waive the right to say, wait a second, their claims, their defenses may have questions of fact against us, but in our favor, we don't think there are any. What else do you think would be relevant that we ought to know or that the district court ought to know? What other facts might be out there? Or what discovery – We have all the insurance. We have all the insurance forms. We have the e-mails. We have the Coast Guard certificate. We can look at all of those things. We can see who's listed and who's not listed. And Southwest Traders is not listed on the insurance. Nobody disclosed to Southwest Traders. It was – oh, it goes back and forth. There are ways of figuring it out, but it was not brought until after Mr. Lambert's death. No. The certificate of documentation was sent before the policy. From the Coast Guard. You're talking about the – The Coast Guard – you get the certificate of documentation. That was sent to the broker in November. Right. They might have – that might have set off some alarm bells in their head, but it didn't. Well, there's no question that there was – there were mistakes made in the application process of this insurance. I don't think there's any real good argument that any of these were intentional. So this is – this falls into the what do you do when you've got mistakes. Right. Okay. And you decide whether these mistakes are honestly material to the underwriting decision. Honestly material. Not just whether somebody can come in and give a self-serving declaration that's untested by cross-examination or any backup or discovery. You've got to decide whether that's material. Now, in the two cases that the Ninth Circuit has discussed this topic on, we've got the – we look at this issue. And one of them is the Lloyds case where you've got a nondisclosure that was obviously material and obviously intentional. Wouldn't it have been material, though, to know who Mr. Gates was? It may have been. Well, why would it – why would it may have been? Why wouldn't an insurer want to know who was going to be operating this ship, especially if they had known that Mr. Lambert was a Canadian citizen and therefore not eligible to own or operate a U.S.-flagged ship? Now, there can be – look, this is the fishing business, okay? Sometimes stuff like that is material and sometimes it's not. Sometimes people structure their ownership in a way that absolutely has no honest effect in the risk. And sometimes it does. For example, in the two Ninth Circuit cases, the way the ownership was structured was obviously material. You mean it's material to the outcome of this case when we know whether Mr. Gates is a seaman at all or not a seaman? No, whether he had any real role in the operational change of the risk. Or ultimately, the question is whether the underwriter's statement. To this day, do we know who Mr. Gates is? Yes, yes. Who is he? He's a friend of Mr. Lambert's who lives in Honolulu. Does he have a captain's license? No, he wasn't going to operate the boat as a skipper. It was important to the insurer that Mr. Lambert was the operator and owner of that ship. Isn't that not correct? It was, yes. Because they'd done business with him for quite a long time. They trusted him. And so all of a sudden, if somebody else is listed as the owner of the ship, this gets critical. Look, if we're bringing somebody in completely from the outside, like in the Polaris case, that's a big difference. But the insurer didn't know whether this guy came from the outside or the inside. Well, maybe the insurer, yes. Maybe she knew and maybe she didn't. We got issues about whether she read the certificate of documentation or whether she didn't. Issues I can't resolve until I ask her, and I ask her with some discovery. Look, the ultimate question here is, was it honestly material, Mr. Gates' involvement material? Honestly, was it?  Not just does she say it, does the underwriter say it. I honestly, that's... Okay. Well, I'm going to tell you. Look, we're in the insurance world. Okay? When claims are made, oftentimes underwriters will go in and look for some basis for denial. Okay? Sometimes they're honest reasons and sometimes they're not. And you really don't know the difference until you can test them. You've got to ask them, you cross-examine, you do some discovery, and then sometimes you find out, well, it's just a pretext. It was an opportunistic pretext. And you don't find that out until you get to do the discovery, until you get to do your case. UF imposes a little more restrictions on insureds than normal insurance policies, though. So perhaps we shouldn't just talk about what goes on in the rest of the insurance world. Talk about what was in the admiralty insurance world. Right? In the... And... Yeah. And it seems not unintelligible but unlikely that an insurer would not have any interest in who was the owner, the true owner, etc., of a boat. Well... It would seem that you don't need to know was he a friend or not a friend or was he a bounder or not a bounder. You just want to know that before you issue the policy. I take it you would if you were an insurer. Maybe you wouldn't. Maybe you wouldn't care because you'd be, you know, a loose kind of insurer. But I'm... It doesn't seem at all surprising the insurance company would think that was an important factor. Absolutely. But look, let's not run the risk of saying that we judges know as a matter of law what's material for these insurers. And I'm not saying it's not material... Ain't no risk. Ain't no risk. The thing is we're a summary judge in the summary judgment world. And in the summary judgment world, if what you're suggesting, say, take Matsushita at the Supreme Court, if what you're suggesting doesn't make much sense, then you're in big trouble. You better have a lot more evidence. Well, but if we're at the beginning... Look, I agree that maybe at some point further on down in this case it's right for summary judgment, okay, once we test her judgment of materiality. But materiality, the law requires materiality. And by its nature, that's a fact determination. Was it truly material? Now, on certain occasions, the courts can look at it and say, well, as a matter of law, it was material. For example, if somebody structures their ownership company to conceal the fact that they've got some fraud guy who's got a nine-year history of phony claims, that's obviously material. But is it honestly material to find out... Look, the name of the owner is material. But finding out whether the name of the owner is Reg Gates may or may not be material. It depends on what Mr. Gates' role is and whether that honestly affects the risk. Now, maybe it does affect the risk. You keep using the word honestly, and I'm not sure that that's the standard that we're applying in this particular case. Nobody's claiming dishonesty here. When I say honesty, I mean, look, Ms. Armfeld said that this would have made a difference, okay? I think we're entitled to challenge that, not just accept that. But you want to challenge it sort of in fact and not in theory. I want to ask her and say, look, for example, I know of a half a dozen other... But you just told us just a minute ago, counsel, that it might or might not make a difference. Well, if it might make a difference, then the fact that you didn't disclose it is material. What? I mean, the insurance company doesn't get to issue its policy, I should think. I should think the rule wouldn't be, well, okay, you issued your policy. And a year from now, you get to find out, was it material or not? Because it turns out Mr. Gates is a good guy and not a bad guy. If you were a bad guy, it's material. If he's a good guy, it's not. Is that your argument? No, I'm saying it may be material, but let me... No, I'm saying it may... If he's a bad guy... Is it material if it's unknown whether he's a bad guy or a good guy, or is it only material if he's a bad guy? In your view. It would be material if he's a bad guy. If he's a good guy, it might not be material. And therefore, it's material if he might be a bad guy and we don't know whether he's a bad guy. And your client failed to disclose that. How do I write my policy if I don't know? And you're saying, don't worry about whether you know the truth or not. No, no. Wait a minute. You are saying, don't worry about whether you knew the truth or not when you issued your policy. We'll find out later whether it would have made a difference. No, I'm saying you can't make that judgment until you know what's behind the curtain. Look, for example, this company, the owner of this ship was an LLC. Lots of ships are owned by LLCs and corporations. Insurance policies are written on them. Does that mean that every underwriter can then go back and say, look, I didn't know that you had this 1% owner in the LLC behind the LLC curtain, and had I known that, well, that was a material thing. And so, boom, no coverage. No. It may or may not make a difference. It is a problem when you have an LLC that is a sole owner and it turns out not to be Mr. Lambert and that Mr. Lambert is disqualified from being the captain of the ship here because he's a Canadian citizen. And now we just have a whole bunch of unanswered questions about who it is that's really going to be operating this and what the risk is to the insurance company. And those questions should be dealt with through the case, through the discovery. What's such a rush here that we have to have an absolute abandonment of any discovery, any ability to challenge anybody? Because insurance companies don't look at the end product. They have to evaluate risk up front. And they couldn't evaluate the risk because your client didn't disclose all of the facts. The insurance company, no matter what you say about the up front, they knew for four months after this casualty that Southwest Traders was the insurer. They went all the way through and actually came to a conclusion and settled this claim for four months. Now, that suggests to me that for four months they really didn't care about this. That's their action. That's their conduct. And then for the next day, the day after a lawyer shows up to say, oh, no, forget about the last four months. Read my declaration because now everything we did kind of doesn't count. That suggests that maybe that declaration isn't exactly honest. Maybe their conduct was a more honest characterization of what really was material to them. And I think we understand your point. You're way over your time. Oh, thank you. Thank you, Your Honors, and may it please the Court. My name is Kathleen Fletcher. I'm appearing on behalf of Defendants Appellee's United Specialty Insurance Company, WFT, and Optimum Claims. For the record, we're not related. That's correct, as far as I know. This case involves a policy of marine insurance issued for the vessel, the Pacific Dawn. The District Court properly granted summary judgment for the insurers on two independent grounds that should both be affirmed. First, it was granted under the doctrine of ubermae fidei for failure to disclose material facts regarding the vessel's ownership, which rendered the policy void from its inception. The District Court also found independently that SW Traders was not an insured under the policy. I'd first like to address why the District Court's ubermae fidei ruling was correct. Both the law and the policy itself require that an insurance applicant fully and voluntarily disclose all facts material to the underwriting risk. This duty of utmost good faith rests on disclosure, not solicitation, so that even if not asked for specific information, the insured must disclose any fact that is material. And a fact is material if it would have affected the insurer's decision to insure a vessel at all or at a particular premium. Here, Stanley Lambert represented on the insurance application that he and his company, Pacific Dawn Limited, located in Hawaii, were the owners of the vessel, that the vessel would be owner-operated, and that he would be its skipper. Lambert and Pacific Dawn are the only named insureds on the policy, and there are no additional insureds. In fact, it wasn't learned until much later that the legal documented owner of the vessel was, in fact, a Washington company named Southwest Traders, and that it had one member who was not Mr. Lambert, but someone named Reginald Gates. It looks like the insurance company, at least the broker, could have prevented a lot of misunderstanding here when she got the Coast Guard certificate. The broker is the agent of the insured and is not the insurer here. The broker is not a defendant. It still looks like we could have prevented some problems here. Yes. Either by going back to the insured and saying, you've got some additional things that we ought to clear up here because these things don't match, or even by alerting the insurance company, I've got to look into this because I've got three different names here and only two are listed on the policy. I couldn't agree with you more that the broker and the insured together have that duty. Did the Coast Guard certificate go to the insurance company? It did. They asked for it, I think. They asked for it. They could have checked it and seen that there was a discrepancy between the owner on the Coast Guard certificate and the owner showing on the insurance policy. Well, I think the answer is yes. They could have. However, if they had looked at the Coast Guard documentation, exactly what it says is owner, SW Traders, and it lists the same Pio Lane, Hawaii address as Pacific Dawn Limited. It also says one member. It doesn't say who that member is. The inference from that address is that it is still Stan Lambert's company, and the e-mail forwarding the PDF attachment of the Coast Guard documentation said, here's documentation on Stan's vessel. Do we know whether the address in Hawaii belonged to Mr. Gates or Mr. Lambert? It was listed for Mr. Lambert on the insurance application, the policy. It was listed throughout for Mr. Lambert. Is it Mr. Gates' home? I have no idea, but it's been listed for Mr. Lambert consistently in the record. I have no reason to believe it's Mr. Gates' home. Okay. Just to close the facts with respect to the Coast Guard documentation, all of the facts surrounding that, the way it was transmitted, the reference to it as documentation on Stan's vessel, really give only one unmistakable impression, and that's that Stanley Lambert is still the boat's owner. And also this passive attachment of a document referring to it as documentation on someone's vessel is not the kind of full and voluntary disclosure required by law. It also doesn't address the other omissions addressed by Ms. Armfield. And in turning to the question of whether this undisclosed ownership was material, I think that the insurers have established that here in two ways. First of all, under Cigna v. Polaris, vessel ownership in marine underwriting is material as a matter of law. Even an undisclosed half-ownership interest in a vessel was found by the Central District of California to be material as a matter of law, and this court has upheld summary decisions on materiality in several other cases, including Montford and Inlet Fisheries. The other way that the insurers established materiality is with the declaration of Robin Armfield. She has 30 years of underwriting experience and identified several undisclosed facts that she found to be material to the underwriting risk. SW Trader's position, they can see that Mr. Gates was, that the identity of Mr. Gates was not provided to the insurers, and also that they were not made aware that he was the sole member of the Vessel Loaning Corporation. They simply claim that it's not material, and for that they rely on the declaration of insurance broker, Sharon Edmondson. But as a broker and not an underwriter, she lacks foundation to dispute what an underwriter finds to be material. This court has rejected the testimony of non-underwriters who purport to dispute what an underwriter finds material in Inlet Fisheries. The Central District of California did so as well in the Malone case. With respect to SW Trader's request for a 56-F continuance, they can't demonstrate the requisite abuse of discretion by the district court to overturn its implicit denial of this request. A 56-F declaration must make clear what specific facts are sought through further discovery and how they would preclude summary judgment. The declaration involved here did not do so. It simply stated that in counsel's opinion, responses to several written discovery requests could be used to defend against summary judgment, but he did not specify precisely what information was sought that would defeat summary judgment. In addition, he claimed to need the deposition of Robin Armfield, and he wanted to ask her several things, including why the vessel ownership was material. She addressed that directly in both of her declarations. So counsel's declaration consisted purely of speculation that if only given the chance to depose her, her declaration testimony might change. This is the kind of wild speculation that the court rejected in Mark Olis v. Ryan in a 56-F request. And lastly, there's no abuse of discretion by the district court if the party requesting more discovery has failed to diligently pursue it in the past. Here before removal, SW Traders noted and unilaterally canceled the deposition of Ms. Armfield on three separate occasions. And so the denial of the 56-F request was proper. I'd next like to address why the district court's ruling that SW Traders was not an insured under the policy was also correct. As noted, as a predicate issue, the district court decided the insurers submit incorrectly that Washington law applied to the policy instead of Hawaii law. The court didn't need to reach this decision, however, because there is no conflict between Washington and Hawaii law on the question of whether SW Traders is an insured, because the answer under either state's law is no, it is not. Nonetheless, under either state's law, SW Traders is not an insured. It's not a named insured on the application or the policy. The only named insured on the application and the policy is Stanley Lambert, Pacific Dawn Limited. SW Traders played no role in the formation of the policy contract. Offering acceptance took place between Lambert and the insurers, and consideration was admittedly paid for by Lambert. There's no evidence of any agreement between SW Traders and the insurers, nor is there any evidence that SW Traders be an additional insured on the policy or a third-party beneficiary. As a last-ditch effort, SW Traders misconstrues a clause in the policy and claims that it covers vessel owners automatically, but this is a strained reading of the policy and does not hold water. The clause states that it is agreed that this policy also covers the insured and affiliated companies of the insured, be they owners, subsidiaries, et cetera.  And even under the most strained reading of this clause, it cannot be said to provide coverage to SW Traders. The term owners means owners of the insured, not owners of the vessel. And so the plain meaning is that the policy covers owners of the insured and affiliated companies of the insured. Southwest Traders is neither. In sum, Southwest Traders and Mr. Gates are not named on the policy. They were not disclosed during the application process or the underwriting process, and the fact of their ownership of the boat is material. They also did not pay for the boat. They didn't pay for the insurance policy, and there's no evidence that they owned the cargo that was damaged, which is the subject of this claim. Yet they apparently seek a windfall of policy benefits. While they're evidently so undercapitalized that the boat is languishing in shipyard, accruing daily charges, even though it was there for two days. Isn't the problem that the insurance company has settled the claim, right? Didn't they settle with the estranged wife? That's correct. She apparently has no interest in the boat, so the boat sits. They settled with the estate. Right, which it looks like she may have a claim against. Right. Correct. Evidently the estate may not have any interest in fixing the boat, so the boat sits in Hawaii. Well, that's a good question because evidently Southwest Traders is the legal document owner of the boat, so I think there's a question there that I don't know what will be done with the boat. We don't need to go there. But the very fact that Southwest Traders is now suing the insurance company seeking not only policy benefits but travel damages and attorney's fees and subjecting the insurers to competing claims for this policy, it's incredible that they could also claim that it's not a material fact that their identity was not disclosed. On those grounds, summary judgment should be affirmed. And as a last matter, I'd like to address the choice of law issue in the hopefully rare event. I thought you said it makes no difference. I don't think it makes any difference. So do you have to describe the whole issue to us if it makes no difference? Only in the event that this Court decides to reverse both summary judgment decisions would the Court's ruling on the choice of law become relevant if this case were to be remanded, if Your Honors don't wish to hear any more about that subject. I think we understand the issue. Thank you very much. Thank you, Ms. Fletcher. Mr. Moran, you used your time, but we helped you use it. I will allow you one minute if there is something that you think the Court needs to hear. Let me just take my one-minute shot. The issue is here, a mistake was made about ownership. It was not intentional. It was not deliberate. So the issue is, directly addressing your question, is every mistake material? Is every mistake material, including mistake about ownership? And my only posit to you folks is sometimes it is and sometimes it isn't. Sometimes mistakes matter and sometimes they don't, and we should go back to the District Court and determine whether this particular mistake actually made a difference or not. Thank you. Thank you. Thank counsel for the argument. Southwest Traders is submitted.
judges: Fletcher B. , Fernandez, Bybee